# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ERNEST MORGAN,** | 1:17-cv-425-LJO-JLT |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| **EDMUND G. BROWN,** *et al.*, | **(ECF No. 15)** |
| Defendants. | |

In this case, Plaintiff Ernest Morgan ("Plaintiff") brings three claims under 42 U.S.C. § 1983 against Defendants Edmund G. Brown, Jr., C. Baker, D. Meadows, J. Schutte, P. Guzman, J. Gomez, J. Garcia, J. McNutt, and Does 1-10, inclusive (collectively, "Defendants"), arising from the March 10, 2016 assault and battery against Plaintiff while he was incarcerated at Wasco State Prison ("Wasco"). Complaint ("Compl."), ECF No. 1. Specifically, Plaintiff alleges that Defendants acted in violation of the Eighth and Fourteenth Amendments for failing to protect him from being attacked, for not alleviating the overcrowding at Wasco, and denying him adequate medical care. *Id.*

Defendants now move for dismissal of the first two claims in Plaintiff's Complaint pursuant to Federal Rule[1] of Civil Procedure 12(b)(6). ECF No. 15. Plaintiff filed his opposition (ECF No. 19) and Defendants replied (ECF No. 20). This matter is suitable for disposition without oral argument. *See* E.D. Cal. L.R. 230(g). For the reasons below, the Court GRANTS Defendants' motion.

---

[1] All further references to any "Rule" are to the Federal Rules of Civil Procedure.

1

# I. SUMMARY OF COMPLAINT[2]

Plaintiff was a resident inmate at Wasco from approximately February 10, 2016 until December 23, 2016. Compl. ¶ 2. Aside from Brown, who was the Governor of California, Defendants were employed as prison guards at Wasco during the relevant time period. *Id.*¶ 3.

Before March 10, 2016, Plaintiff informed Defendants that he would be at risk of being attacked by other inmates if he were housed with the general population of inmates at Wasco because of a prior conviction, and requested to be housed in the Sensitive Needs Yard ("SNY"). *Id.* ¶¶ 11-13. Defendants placed Plaintiff in the SNY. *Id.* ¶ 14.

On or about March 10, 2016, while Plaintiff was in the exercise yard with other SNY inmates, Kameron Merrilhooper ("Merrilhooper"), a general population inmate, entered the SNY exercise yard through an unguarded door, and attacked Plaintiff. *Id.* ¶ 15. Prior to this incident, Defendant Guzman had opened a door that separated the general population from the SNY and left the door unguarded. *Id.* Because of overcrowded conditions at Wasco, Defendants were unable to observe the attack and respond in a timely manner. *Id.* ¶ 17. As a result of the attack, Plaintiff sustained obvious physical injuries to his body and face, including a broken nose that required medical care. *Id.* ¶ 19-22. Plaintiff did not receive immediate medical care "despite being bloodied and having a visible broken nose." *Id.* ¶ 45.

# II. STANDARD OF DECISION

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the

---

[2] This factual summary is derived from the Complaint, the general truth of which the Court must assume for purposes of Rule 12(b)(6). *See Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

2

pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must, in accordance with Rule 8, allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

### III. <u>42 U.S.C. § 1983</u>

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution … shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94

3

(1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Furthermore, § 1983 requires that there be an actual connection or link between the actions of Defendants and the constitutional deprivations alleged to have been suffered by Plaintiff. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978). In order to state a claim for relief under § 1983, Plaintiff must satisfy the "linkage requirement"—meaning that he must link each named Defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Plaintiff must specify which Defendant(s) he feels are responsible for each violation of his constitutional rights and the factual basis, as his Complaint must put each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir.2004).

Furthermore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979). To state a claim for relief under §1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Under § 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer." *Id*. Knowledge and acquiescence of a subordinate's misconduct is insufficient

4

to establish liability; each government official is only liable for his or her own misconduct. *Id*.

## IV. DISCUSSION

### A. Failure to Protect

Plaintiff first alleges that Defendants violated his Eighth and Fourteenth Amendment rights by "allowing general population inmates to have access to the Special Needs Yard inmates, thereby allowing the violent attack on Plaintiff to happen." Compl. ¶¶ 27, 30. Defendants seek dismissal of this claim on the basis that Plaintiff has failed to allege facts demonstrating that Defendants knew or should have known that Merrilhopper would attack Plaintiff, and note that although Plaintiff has made a specific allegation against Defendant Guzman, he has alleged no specific facts regarding the action of the remaining Defendants. ECF No. 15-1 at 4.[3] Defendants argue that Plaintiff has at most alleged negligence against Guzman, and that mere negligence is insufficient to rise to the level of a constitutional violation. *Id.*

"Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The failure of prison officials to protect inmates may amount to an Eighth Amendment Violation when "(1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834)). As for the first prong, "an inmate making a failure to protect claim satisfies the 'sufficiently serious deprivation' requirement by 'show[ing] that he is incarcerated under conditions posing a substantial risk of serious harm." *Lemire v. California Dep't of Corr. & Rehab*, 726 F.3d 1062, 1075 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 834). To satisfy the second prong, deliberate indifference, the plaintiff must allege that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that the defendant] must also have

---

[3] Pincites refer to CM/ECF pagination located at the top of each page.

drawn and disregarded that inference." *Torres v. Arellano*, No. 1:15-cv-00575-DAD-MJS (PC), 2017 WL 1355823, at *6 (E.D. Cal. Mar. 24, 2017) (citing *Farmer*, 511 U.S. at 837).

The Court finds that Plaintiff has failed to allege sufficient facts to support his claim that Defendants were deliberately indifferent in failing to prevent Merrilhooper's assault on him. As Defendants have pointed out, the Court cannot make a reasonable inference that any Defendant, even Guzman, is liable for deliberate indifference because of the dearth of factual content in the Complaint's allegations. *See Iqbal*, 556 U.S. at 678. The Complaint includes conclusory allegation that Guzman and other Defendants were "deliberately indifferent," and provides specific allegations only with regard to Guzman and no facts about any other Defendant. Mere allegations that Defendants were deliberately indifferent, without any specific allegations as to which Defendant is liable for what misconduct, are insufficient to allege their liability for deliberate indifference. *See id.*

This case is distinguishable from *Pavlick v. Mifflin*, 90 F.3d 205 (7th Cir. 1996), which Plaintiff cites for the notion that deliberate indifference can be inferred when "a guard … creates the potential for an inmate assault by unlocking a door." In *Pavlick*, the guard was observed conversing with several inmates who had a motive to assault the plaintiff after the plaintiff had apprised the prison's officials that some inmates were planning to "hit" the prison's superintendent. *See* 90 F.3d at 208. Here, there are no such allegations that Guzman knew or should have known that Merrilhooper would attack Plaintiff, aside from the Complaint's bare allegation that Guzman was "deliberately indifferent." *See* Compl. ¶ 16. Even generously construing the Complaint's allegations, Guzman leaving the door unlocked[4] is "merely consistent" with his liability, and the Complaint therefore "stops short of the line between possibility and

---

[4] Defendants argue that Plaintiff's claim fails because "the only reason [Merrilhooper] was able to escape from the general population yard from the general population yard was that Officer Guzman was negligent for failing to lock a gate (in combination with [Merrilhooper]'s ability to recognize this oversight, escape from the general population yard, jump a fence, and enter the SNY yard)." ECF No. 15-1 at 5. However, because these facts are not alleged in the Complaint and "the focus of any Rule 12(b)(6) dismissal . . .is the complaint," the Court will not consider these factual allegations made by Defendants or any legal argument premised thereon. *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 935 (N.D. Cal. 2014) (holding that a Rule 12(b)(6) motion "must be treated as a motion for summary judgment under Rule 56" if any party to the motion to dismiss submits materials outside the pleadings in support of the motion, and the court relies on those materials.).

6

plausibility of entitlement to relief." *See Twombly*, 550 U.S. at 557.

Plaintiff additionally cites *Robinson v. Prunty*, 249 F.3d 862 (9th Cir. 2001). In *Robinson*, the Ninth Circuit affirmed the district court's denial of qualified immunity to prison officials who should have been aware of the "serious risk of violent outbreaks" that could occur when inmates of different races were placed in the same exercise yard because of the alleged frequency with which these race-based outbreaks occurred, and nevertheless released an inmate of a different race into the yard with the plaintiff. *See* 249 F.3d at 866-67. Plaintiff argues *Robinson* permits a similar inference in the situation alleged in the Complaint between SNY inmates and general population inmates, and that Defendants therefore knew or should have known of a substantial risk of danger to Plaintiff by Merrilhopper or other general population inmates. ECF No. 19 at 7.

The Court disagrees. In *Robinson*, there was sufficient factual context for the plaintiff's race-based deliberate indifference claim, as he had alleged that the prison officials were aware of racial tensions between various gang members, and had some precautions in place to prevent race-based altercations, but that they nevertheless intentionally placed him in a racially integrated exercise yard where he was attacked. *See* 249 F.3d at 863-65. The Complaint's allegations in this case are much less specific. While the allegation that Defendants housed Plaintiff in the SNY on account of his prior conviction making him vulnerable to other inmates could help lay the factual foundation for a deliberate indifference claim with the addition of further facts to each named Defendant, it alone is insufficient for the Court to draw a reasonable inference that any Defendant knew or should have known of any substantial risk of serious harm to Plaintiff or that any Defendant "acted with the specific intent" to cause Plaintiff harm.[5] The Complaint therefore has not "nudged [Plaintiff]'s claims … across the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680.

For these reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's first claim.

---

[5] This claim is especially weak against Defendant Brown, as there are no facts in the Complaint suggesting how or why the Governor of California could be implicated in the attack on Plaintiff.

7

Dismissal shall be with leave to amend.

**B.     Overcrowded Conditions**

Plaintiff's second claim is that the overcrowded conditions at Wasco rendered Defendants "unable to maintain control, unable to keep the general population separated from the Special Needs Yard, and unable to protect the safety of inmates," and that these conditions resulted in Merrilhooper's attack on Plaintiff. Compl. ¶¶ 39-40. Specifically, Plaintiff alleges that the attack on Plaintiff can be traced to the following sequence of events: 1) on or about June 30, 2011, Defendant Brown was ordered to reduce the California prison population to 137.5% design capacity "to remedy the unconstitutional condition of overcrowding in California prisons; 2) on or about February 10, 2014, Brown was ordered by a special three-judge panel in the Eastern and Northern Districts of California in *Coleman v. Brown*, Case 3:01-cv-1351-TEH, ECF No. 2766 to 137.5% design capacity by February 28, 2016, and; 3) on or about March 10, 2016, Wasco was at 172.9% design capacity. *Id.* ¶¶ 35-38.

Defendants argue that the Complaint does not allege facts providing a sufficient link between the overcrowding at Wasco to his assault, and that Plaintiff fails to show that the court-ordered population cap in *Coleman* was violated. ECF No. 15-1 at 6-8. Defendants are correct. The original *Coleman* order, which addressed a consolidated set of prisoner class actions against California, makes it clear that California government officials were to provide the court with a population reduction plan that would reduce the general population in the California Department of Corrections and Rehabilitation's ("CDCR") adult institutions to 137.5% of their "combined design capacity" within two years of its order, which was issued on August 4, 2009. *See Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 1003 (E.D. Cal and N.D. Cal. 2009). The special three-judge panel has continued to oversee the implementation of the original order over the course of subsequent years. *See generally* Civil Docket, *Coleman v. Brown*, 2:90-cv-00520-KJM-DB (E.D. Cal); 3:01-cv-01351-THE (N.D. Cal). Plaintiffs cited the Court's February 10, 2014 Order, which specifically granted Defendants' request for an extension of time until February 28, 2016 to comply with its earlier order "to reduce California's prison population to

137.5% design capacity." ECF No. 2766, Case 3:01-cv-1341-TEH, filed February 10, 2014. According to CDCR's official records[6] of its population during the week of March 9, 2016, the total population of CDCR's adult institutions was at 132.2% design capacity. In contrast to Plaintiff's allegation that there was a Wasco-specific population cap, the original *Coleman* order specifically "conclude[d] that a single systemwide cap rather than a series of institution-specific caps or a combination of systemwide and institution-specific caps [was] appropriate" as it devised the remedy in that case. *See* 922 F. Supp. 2d at 963. Therefore, Wasco's 172.9% design capacity, which is confirmed by CDCR's official records, is not in violation of any court order. *See id.*

Relatedly, the Court finds that Plaintiff fails to allege sufficient facts demonstrating that overcrowding at Wasco led to his being assaulted by Merrilhooper. As discussed above, the Complaint's lack of factual content precludes the Court from making a reasonable inference that Defendants are liable under the Eighth Amendment. The cases cited by the parties—*Rhodes v. Chapman*, 452 U.S. 337 (1981), and *Balla v. Idaho State Bd. of Corrs.*, 869 F.2d 461 (9th Cir. 1989)—support Defendants' position, rather than Plaintiff's, as they merely provide guidance as to when allegations of overcrowding can support a claim for an Eighth Amendment violation. As noted by Defendants, in *Rhodes*, the Supreme Court found that allegations of overcrowding alone are insufficient to demonstrate an Eighth Amendment violation. 452 U.S. at 348-49 ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care, or sanitation. Nor did it increase violence among inmates or create other conditions intolerable for prison confinement."). Similarly, in *Balla*, the Ninth Circuit noted that overcrowding allegations have "no constitutional significance standing alone," but found that "[o]nly when overcrowding is combined with other factors such as violence or inadequate staffing does overcrowding rise to an [Eighth Amendment] violation." 869 F.2d at 471. Plaintiff's argument that "there is at least one incident of violence due to

---

[6] This document, which Defendant attached as an exhibit in support of its motion (ECF No. 15-2, Ex. B), is an undisputed matter of public record, and is therefore a proper subject of judicial notice pursuant to Federal Rule of Evidence 201.

overcrowding," referring to his own assault, is unavailing, because he nevertheless fails to allege specific facts demonstrating how the overcrowding caused increased violence at Wasco or was related in any way to Merrilhooper assaulting him. *See Rounds v. Woodford*, No. CIV S-05-0555 GEB GGH P, 2009 WL 1657462, at *2-3 (E.D. Cal. June 12, 2009) ("[P]laintiff's allegations only demonstrate a potential effect that overcrowding may have, or allege a highly speculative cause and effect between overcrowding and the alleged harm to be avoided or refer to 'rights' denied by overcrowding which find no source in the Constitution."). The Complaint's allegation that overcrowding resulted in Defendants' being "unable to maintain control, unable to keep the general population separated from the Special Needs Yard, and unable to protect the safety of inmates" are no less vague than those dismissed by the court in *Rounds*, where the plaintiff alleged that overcrowding caused "more confrontations between prisoners and staff" and weapons to become more "easily accessible." *See id.*[7] Accordingly, Plaintiff has not alleged an Eighth Amendment overcrowding claim.

The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's second claim. Dismissal shall be with leave to amend.

## V. CONCLUSION AND ORDER

Defendant's motion to dismiss (ECF No. 15) is GRANTED with leave to amend. Plaintiff shall file an amended complaint no later than twenty-one days of this Order being filed. Any amended complaint must address § 1983's linkage requirement for all named Defendants, as discussed above.

IT IS SO ORDERED.

    Dated:   **June 29, 2017**            /s/ Lawrence J. O'Neill
                                                    UNITED STATES CHIEF DISTRICT JUDGE

---

[7] The Court disagrees with Plaintiff's assertion that "Defendants' authorities provide the Court with authority for Plaintiff to conduct discovery regarding (1) prior instances of violence at Wasco State Prison while the prison was overcrowded and (2) the staffing needs of Wasco State Prison on the date of the incident." ECF No. 19 at 8. Plaintiff's argument is expressly refuted by the Supreme Court's decision in *Iqbal*. *See* 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").