UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST MORGAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EDMUND G. BROWN, et al.,<br><br>　　　　　Defendants. | 1:17-cv-00425-LJO-JLT<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF No. 38)** |

## I. INTRODUCTION

This case concerns Plaintiff's claims under 42 U.S.C. § 1983 for injuries sustained by Plaintiff while he was incarcerated at Wasco State Prison. Plaintiff's First Amended Complaint, filed on July 20, 2017, states a single claim under § 1983 alleging that Defendant P. Guzman ("Defendant" or "Officer Guzman") and Doe Defendants were deliberately indifferent to Plaintiff's safety in violation of the Eighth and Fourteenth Amendments when Plaintiff was battered by another inmate. ECF No. 22. On July 26, 2018, Defendant filed the instant motion for summary judgment. ECF No. 38. Plaintiff filed an opposition on August 8, 2018. ECF No. 41. Defendant filed a reply on August 17, 2018. ECF No. 44. On August 22, 2018, the Court determined this matter to be suitable for decision on the papers, and took the motion under submission. ECF No. 57. For the following reasons, Defendant's motion for summary judgment is DENIED.

## II. BACKGROUND

The following facts are drawn from the parties' joint statement of undisputed facts, ECF No. 38-3, and from the respective statements of undisputed facts presented by each party to the extent that those facts are genuinely not in dispute. Plaintiff was in the custody of the California Department of Corrections and Rehabilitation and confined at Wasco State Prison ("Wasco") between February 10 and December 23, 2016. ECF No. 38-3 ¶ 1. Plaintiff was housed at Facility H, Building 4, a designated Special Needs Yard ("SNY") housing unit. *Id.* ¶ 3. The SNY is completely surrounded by a fence separating the SNY and general population inmates. ECF No. 41-1 ¶ 7. The fence has four pedestrian gates, which are always locked except when inmates are going into or out of the SNY, and which are locked behind inmates entering or exciting the SNY. *Id.* ¶¶ 9, 10. The fence has a vehicle gate, which is locked except when vehicles are accessing the SNY. *Id.* ¶ 11.

Officer Guzman was a correctional officer at Wasco, and was assigned as a dorm officer to Facility H, Building 2, Dorm 2, also known as Facility H2, at Wasco as of March 10, 2016. *Id.* ¶ 2. Facility H2 was a medical dorm housing general population inmates with medical or mental-health issues. ECF No. 41-1 ¶ 4. Among Officer Guzman's duties was releasing inmates in Facility H2 for the medical pill call. *Id.* ¶ 4. After receiving a radio call from an officer in medical, Officer Guzman would announce pill call over the Facility H2 intercom, and inmates would line up for the pill call before Officer Guzman opened the door. ECF No. 38-3 ¶ 5; ECF No. 41-1 ¶ 16. The medical officer stationed outside the medical department was responsible for overseeing inmates as they walked to the clinic. ECF No. 51-1 ¶ 21. Due to medical privacy concerns, Officer Guzman did not receive a list of inmates to be released for pill call. *Id.* ¶ 13. After the last inmate going to pill call exited Facility H2, Officer Guzman would close and secure the door. *Id.* ¶ 22. Officer Guzman does not have a key to unlock the pedestrian or vehicle gates in the SNY. *Id.* ¶ 12.

On March 10, 2016, Inmate Merrillhooper, a general population inmate assigned to Facility H2, gained access to the SNY inmates. ECF No. 38-3 ¶¶ 7, 9. Plaintiff, who was walking in the exercise

2

yard, saw Merrillhooper, who he had never met prior to the incident, on top of the fence separating the SNY inmates from general population. *Id*. ¶¶ 8, 9; ECF No. 45 ¶ 19. Plaintiff then saw Merrillhooper come over the fence and down into the yard. ECF No. 38-3 ¶¶ 8, 9. Merrillhooper grabbed hold of Plaintiff and struck him several times on his head, causing Plaintiff to fall to his knees and then to the ground. ECF No. 45 ¶ 23. Plaintiff sustained a broken nose, facial abrasions, two black eyes, and a busted lip. *Id*. ¶ 24. While subsequently receiving medical care, Plaintiff could hear his nose shattering. *Id*.

Officer Guzman conducted pill call on March 10, 2016. ECF No. 41-1 at 25. While Officer Guzman was standing by the open door of Facility H2, an inmate asked whether he should go to the clinic with a ducat for a medical appointment. ECF No. 41-1 ¶ 27. Officer Guzman turned to tell the inmate that he would be called soon. *Id*. Four inmates then told Officer Guzman that Merrillhooper had exited the building with the pill call. *Id*. ¶ 28. Officer Guzman turned toward the Facility H2 doorway and saw Plaintiff, with whom he had no prior contact, lying in the yard and bleeding from the face, after which Officer Guzman heard an alarm and secured the Facility H2 door. *Id*. ¶ 10.

### III. **LEGAL STANDARD**

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must

3

"affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## IV. ANALYSIS

### A. 42 U.S.C. § 1983

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To succeed in asserting the § 1983 claims, Plaintiff must demonstrate that Defendant's actions (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d

628, 632–33 (9th Cir. 1988); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). As the moving party, Defendant bears the initial burden on summary judgment of pointing out "an absence of evidence to support [Plaintiff's] case." *Celotex*, 477 U.S. at 325. It is also Defendant's burden to prove that he is entitled to qualified immunity. *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

Section 1983 requires that there be an actual connection or link between the actions of the defendant and the constitutional deprivations alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**1.     New Factual Allegations**

Defendant argues in his reply that, as a preliminary matter, Plaintiff has shifted the factual basis for his deliberate indifference claim from the facts alleged in the complaint in order to avoid summary judgment. ECF No. 44 at 9. Specifically, Defendant contends that, in his FAC, Plaintiff alleged that Merrillhooper gained access to the SNY through a gate which Officer Guzman left open and unguarded, and that Defendant was deliberately indifferent in doing so. *Id.* at 8-9. In his opposition to the motion for summary judgment, on the other hand, Plaintiff argues that the action constituting deliberate indifference was Defendant's failure to ensure that an escort officer was present before releasing inmates of Facility H2 for pill call. *Id.* at 9. Defendant argues that the latter actions constitute a new and separate claim of an Eighth Amendment violation, and that Plaintiff should be barred from raising this claim for the first time at the summary judgment stage. *Id.*

Under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a complaint must allege sufficient facts to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*,

5

355 U.S. 41, 47 (1957)). "[Where] the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). Summary judgment is not a "procedural second chance to flesh out inadequate proceedings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). Accordingly, a party may not defeat a motion for summary judgment "by raising theories that lie outside the scope of their pleadings." *Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1119 (E.D. Cal. 2018).

On the balance, Plaintiff's allegations on summary judgment are not so different from those in the FAC as to lie outside the scope of the pleadings. First, the legal theory of liability advanced here, failure to protect in violation of the Eighth Amendment, is the same as that alleged in the FAC. This case is distinct from those where courts have granted summary judgment against a plaintiff advancing an entirely different legal theory that was not pled. *See, e.g., Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (plaintiffs could not proceed on a disparate impact theory of employment discrimination when only disparate treatment theory was pled). The legal theory initially alleged here is the same one Plaintiff is advancing in opposition to the motion for summary judgment. It does not subject Defendant to the necessity of entirely reworking his defense.

Second, the facts advanced by Plaintiff at this stage of the litigation are similar to those alleged in the FAC, liberally construed. Plaintiff's allegations in the FAC, that a door allowing Merrillhooper access to the SNY inmates was left unguarded by Officer Guzman, provided sufficient notice that the point of access for Plaintiff's assailant and the procedures that were in place to prevent such an event would be the focus of this case. While it is apparent that, as discovery in this case progressed, new information came to light, the facts as alleged by Plaintiff in opposing summary judgment are well within the boundaries set by the liberal notice pleading standard. Moreover, it is apparent from the motion for summary judgment that Defendant was aware of the discovered facts, and there is no indication that Defendant has been subject to undue surprise or prejudice. This is not a case where

Plaintiff foisted an entirely new theory at the last minute to avoid summary judgment, but rather one where the facts of the claim evolved with the investigation. Therefore, Defendant's request to bar Plaintiff's arguments is denied. This does not preclude Defendant from raising the alleged inconsistency at trial.

**B.** **<u>Eighth Amendment Failure to Protect</u>**

Plaintiff contends that Defendant's actions constituted a failure to protect him from Merrillhooper in violation of the Eighth Amendment, as applied to state actors through the Fourteenth Amendment. The Eighth Amendment's prohibition on cruel and unusual punishments places prison officials "under an obligation to take reasonable measures to guarantee the safety of the inmates" under their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). This duty requires prison officials to protect prisoners from other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Courts have recognized the challenge this poses in carceral contexts, as "[p]rotecting the safety of prisoners and staff involves difficult choices and evades easy solutions." *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986). Consequently, some deference is afforded to the decisions of prison officials regarding measures undertaken to "preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Those decisions include both measures "taken in response to an actual confrontation with riotous inmates . . . [and] prophylactic or preventative measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley v. Albers*, 475 U.S. 312, 322 (1986).

To show that a prisoner's Eighth Amendment right to be free from cruel and unusual punishment has been violated by a prison officer's failure to protect him, a plaintiff must point to evidence showing that the alleged deprivation was objectively "sufficiently serious," i.e., that the conditions he faced posed

a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," *id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)), the plaintiff must show that the prison official had "a sufficiently culpable state of mind." *Id*. In the context of an alleged failure to protect an inmate, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. Prison officials display a deliberate indifference to an inmate's well-being when they know of and consciously disregard an excessive risk of harm to that inmate's health or safety. *Id*. at 837 "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Thus, "deliberate indifference" entails something more than mere negligence, but may be satisfied with proof of something less than acts or omissions "for the very purpose of causing harm," or that a particular official "acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842. "Whether a prison official had the requisite knowledge of a substantial risk" may be inferred if the prisoner produces evidence sufficient to show that the risk was "obvious." *Id*.

**1. <u>Objective Prong</u>**

To satisfy the first prong of an Eight Amendment failure to protect claim, that the deprivation alleged is, objectively, sufficiently serious, a plaintiff may "show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "The objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt." *Id*. at 1075-76.

Defendant argues that there is no evidence Plaintiff was exposed to a substantial risk of serious harm because adequate means existed at Wasco to separate the SNY inmates from general population inmates and because Officer Guzman's conduction of pill call on March 10, 2016, provided sufficient protection to Plaintiff. ECF No. 38-1 at 5-6. Plaintiff, however, has created a triable issue of fact as to

whether Officer Guzman disregarded his training by opening the door to Facility H2 without confirming that an officer was present to escort the inmates to pill call. Defendant stated in his deposition that he was trained not to open the door for pill call unless an escort officer was present. ECF No. 41-3, Plaintiff's Statement of Disputed Facts ("PDF") No. 14. Neither party has submitted any evidence indicating that an escort officer was present, and Defendant stated that he did not remember whether an escort officer was present. *Id.*, PDF No. 14. Defendant contends that Officer Guzman confirmed that an escort officer was present, construing Officer Guzman's statements that he conducted the March 10, 2016, pill call in his usual manner and that his pill call procedure included confirming that an escort officer was present constituted a positive affirmation of the escort's presence on the specific day in question. ECF No. 38-1 at 6; ECF No. 38-2 ¶¶ 8, 13. This interpretation, however, is at odds with Officer Guzman's statement that he did not remember seeing an escort on the day Plaintiff was attacked. Additionally, Plaintiff has adduced facts indicating that there had been previous assaults on SNY inmates by general population inmates, and that SNY inmates were kept separate for their protection. ECF No. 41-2, PDF Nos. 37, 39. A reasonable jury could conclude that Officer Guzman did not follow the usual pill call procedure on March 10, 2016, and that by doing so he created conditions posing a substantial risk of serious harm to Plaintiff by allowing general population inmates to travel unescorted between Facility H2 and the medical clinic. The Court finds that there is a genuine dispute of material fact as to the objective prong.

   2.     **Subjective Prong**

To satisfy the second prong, Plaintiff must show that Defendant acted with deliberate indifference to his health and safety, meaning that Defendant knew of and consciously disregarded an excessive risk of harm to Plaintiff's health and safety. It is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

Defendant argues that Officer Guzman was not aware of any animosity between Plaintiff and Merrillhooper, and that there is no evidence Officer Guzman had any reason to suspect that there was a danger of Merrillhooper attacking Plaintiff. ECF No. 38-1 at 6. Defendant's argument is unavailing, as it defines the threat posing an excessive risk of harm too narrowly. The risk to which Plaintiff claims Officer Guzman was deliberately indifferent was the possibility that <u>any</u> general population inmate could gain access to the SNY and cause him harm, not that Merrillhooper in particular was likely to pose a heightened risk. ECF No. 41 at 12. A prison official may have been deliberately indifferent even if "he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault . . . it does not does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk . . . for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

A jury may "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. For example, if the "plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'" *Id*. at 842–43. Liability for deliberate indifference may not be premised on constructive notice, but prison officials cannot ignore obvious dangers to inmates. *See id.* at 842.

Plaintiff has adduced facts from which a reasonable jury could conclude that Officer Guzman was aware of the risk posed to SNY inmates from inmates in general population, including that Officer Guzman knew that SNY inmates were segregated from general population for their own protection. ECF No. 41-2, PDF Nos. 36-40. Plaintiff has also adduced facts indicating that Officer Guzman was aware he had a duty to protect inmates, including Plaintiff, from attacks by other inmates. *Id*., PDF No. 34. There

is a dispute as to the height of the fence separating the exercise yard from Facility H2, *see* ECF No. 45 ¶ 20, and a reasonable jury could conclude that a fence of either eight or seven feet in height could be an inadequate barrier. Finally, there is a genuine dispute as to whether Officer Guzman disregarded his training by allowing general population inmates to go to pill call unescorted. From these facts, a reasonable jury could conclude that Officer Guzman was aware of the risk that a general population inmate could gain access to the SNY and injure another inmate, and consciously disregarded that risk by permitting inmates to travel unescorted contrary to procedure. The Court therefore finds that there is a genuine dispute of material fact as to the subjective prong, and Defendant is not entitled to summary judgment on Plaintiff's failure to protect claim.

**C.    Qualified Immunity**

"The doctrine of qualified immunity protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[A] district court may dismiss a claim on qualified immunity grounds under 28 U.S.C. § 1915(e)(2)(B)(iii), but only if it is clear from the complaint that the plaintiff can present no evidence that could overcome a defense of qualified immunity." *Chavez v. Robinson*, 817 F.3d 1162, 1169 (9th Cir. 2016).

When determining whether qualified immunity shields the actions of an official, courts apply a two-pronged test. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). The first prong considers "whether there has been a violation of a constitutional right" while the second prong addresses "whether

that right was clearly established at the time of the [official's] alleged misconduct." *Id*. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236. If the court determines that the allegations do not establish violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Likewise, if the court finds that the right at issue was not clearly established at the time of the alleged misconduct, there is no need to address the first prong. *Pearson*, 555 U.S. at 236.

Here, as explained above, there exists a genuine question of material fact as to whether Officer Guzman failed to protect Plaintiff from violence at the hands of other inmates in violation of the Eighth Amendment. Thus, a constitutional violation has been alleged, and "the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

A clearly established right is one which is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The specific action in question need not have been previously held unlawful, but "in the light of pre-existing law the unlawfulness must be apparent." *Id.* The Supreme Court has cautioned courts against "defin[ing] clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The defendant must "have 'fair and clear warning' that their conduct [was] unlawful." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001). If the defendant could have "reasonably but erroneously believed" that their conduct did not violate Plaintiff's rights, the defendant is entitled to qualified immunity. *Id*. at 1074. The determination of whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 202.

The right of prisoners to be protected from violence at the hands of other inmates is well established, and had been well established by March 10, 2016. *Farmer*, 511 U.S. at 833 ("[A]s the lower courts have uniformly held, and as we have assumed, 'prison officials have a duty . . . to protect

12

prisoners from violence at the hands of other prisoners.") (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). While the exact conduct alleged here, i.e. failing to ensure that general population inmates are escorted while attending pill call, has not been addressed in any prior case cited by either party or disclosed by the Court's own research, the unlawfulness of permitting an general population inmate unrestricted access to SNY inmates would have been apparent to any reasonable prison official. *See Baker v. Moore*, Case No. 1:12-cv-00126-LJO-SAB, 2016 WL 4095828, at *10 (E.D. Cal. Aug. 1, 2016), *findings and recommendations adopted at* 2016 WL 4944127 (E.D. Cal. Sept. 16, 2016) (allowing gang-affiliated inmates to enter the cell of and attack an inmate not affiliated with that gang during lockdown violated clearly established rights, even where there was no indication of hostility between the inmates); *Armstead v. Lappin*, No. CV 11-3363 CAS (MRW), 2013 WL 3791440, at *7 (C.D. Cal. July 18, 2013) (clearly established law would cause a reasonable official to know that housing inmates with gang and racial conflicts created a known risk). As previously addressed, facts have been adduced by Plaintiff indicating that SNY inmates are segregated from the general population for their protection, and a reasonable officer would understand that allowing general population inmates access to SNY inmates would violate the rights of the latter. Accordingly, the Court finds that Defendant is not entitled to qualified immunity.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

**Dated: September 14, 2018**             /s/ Lawrence J. O'Neill
                                    **UNITED STATES CHIEF DISTRICT JUDGE**